UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GETTY IMAGES (US), INC.,
                          Plaintiff,

v.                                 CIV. NO. 14-CV-7114-DLC

MICROSOFT CORPORATION,

                          Defendant.

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF**
**<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

    I.    PLAINTIFF HAS ALLEGED AND DEMONSTRATED THE ACTUAL INFRINGEMENT OF ITS COPYRIGHTED WORKS ......................................... 1

    II.    DEFENDANT INFRINGES PLAINTIFF'S EXCLUSIVE RIGHTS OF REPRODUCTION AND DISPLAY ................................................................... 2

    III.    DEFENDANT'S INFRINGEMENT IS NOT FAIR USE ..................................... 4

    IV.    DEFENDANT'S "VOLITION" ARGUMENT IS A RED HERRING .................. 7

    V.    INJUNCTIVE RELIEF IS NECESSARY TO PREVENT IRREPARABLE HARM ..................................................................................... 8

CONCLUSION ................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**CASES**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2004) .............................................. 5

*Already, LLC v. Nike, Inc.*, 133 S. Ct. 721 (2013) ....................................................................... 9

*American Broadcasting Cos. v. Aereo, Inc.*, 134 S. Ct. 2498 (2014) ............................................ 7

*Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537 (S.D.N.Y. 2013) ................................................................................................................................. 5, 7, 10

*Consumers Union of United States, Inc. v. Admiral Corp.*, 186 F. Supp. 800 (S.D.N.Y. 1960) ........................................................................................................................................ 9-10

*Consumers Union of United States, Inc. v. Theodore Hamm Brewing Co.*, 314 F. Supp. 697 (D. Conn. 1970) ................................................................................................................... 10

*Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007) ................................................................................... 4

*Fox News Network, LLC v. TVEyes, Inc.*, No. 13 Civ. 5315, 2014 WL 4444043 (S.D.N.Y. Sept. 9, 2014) ................................................................................................................ 5

*Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104 (2d Cir. 1998) ............................................ 9

*MAI System Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993) .................................... 2

*Mercury Record Corp. v. Buckingham Record Co.*, 226 F. Supp. 427 (S.D.N.Y. 1963) ............... 9

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) .......................................... 6

*Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102 (9th Cir. 2007) .................................................... 6

*Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098, 2013 WL 2109963 (C.D. Cal. Mar. 8, 2013) ............................................................................................................................ 8

*Perfect 10, Inc. v. Google, Inc.*, 416 F. Supp. 2d 828 (C.D. Cal. 2006), *aff'd in relevant part sub nom.*, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ............... 4

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004) ..................................................... 9

*Sandoval v. New Line Cinema Corp.*, 973 F. Supp. 409 (S.D.N.Y. 1997), *aff'd*, 147 F.3d 215 (2d Cir. 1998) ..................................................................................................................... 5

*Search King, Inc. v. Google Technology, Inc.*, No. CIV-02-1457-M, 2003 WL 21464568 (W.D. Okla. May 27, 2003) ................................................................................................ 4

*Society of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29 (1st Cir. 2012),
   *cert. denied*, 133 S. Ct. 1315 (2013) ...................................................................................7

*United Farm Workers National Union v. Sloan's Supermarkets, Inc.*, 352 F. Supp. 1025
   (S.D.N.Y. 1972) .................................................................................................................10

**STATUTES**

17 U.S.C. § 101............................................................................................................................3

17 U.S.C. § 107............................................................................................................................5

17 U.S.C. § 502............................................................................................................................2

17 U.S.C. § 512(d) .......................................................................................................................6

17 U.S.C. § 512(n) .......................................................................................................................6

**OTHER AUTHORITIES**

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.08 (2014) ..........................7

II Paul Goldstein, *Goldstein on Copyright* § 7.0.2 (3d ed. 2014 Supp.) .........................................7

13C Charles Alan Wright et al., *Federal Practice & Procedure* § 3533.5 (3d ed. 2008) .............10

In its Opposition to Plaintiff's Motion for Preliminary Injunction, Defendant largely pretends that this case concerns Bing Image *Search*, even as it confirms that the material facts concerning the Bing Image *Widget* – its basic manner of operation and its likely uses – are undisputed. But pretending does not make it so: This case remains about the massive copyright infringement that Defendant commits in connection with its Bing Image Widget, infringement that cannot be excused as fair use simply because Defendant uses the products of its Bing Image search engine for the wholly separate (and illegitimate) purpose of displaying images through the Widget without a license to do so.

Although it represents to the Court that it has "voluntarily disabled the Widget," Defendant actually continues – to this day – to support the Widget on websites around the world with a virtually endless supply of images from the vast collection that Defendant has copied and indexed from the Internet at large, including images from Plaintiff's own collection. Defendant's Opposition confirms that a preliminary injunction is necessary to protect Plaintiff from the continued harm that Defendant's conduct both threatens and causes in fact.

I.  **PLAINTIFF HAS ALLEGED AND DEMONSTRATED THE ACTUAL INFRINGEMENT OF ITS COPYRIGHTED WORKS**

Defendant claims that Plaintiff has "neither alleged nor offered evidence that a single one" of Plaintiff's images "has actually been copied or displayed by any website developer using the Widget." Opp. at 2. Not only has Plaintiff more than adequately pleaded the actual infringement of its works, *see, e.g.,* Complaint ¶ 34, and demonstrated the actual infringement of each of the fifty representative works in suit through the Widget, *see* Declaration of Francis J. Aul ("Aul Decl.") Ex. I, but Plaintiff has also identified numerous instances of unlicensed – and ongoing – displays of its images through the Widget on third-party sites. *See* Supplemental Declaration of Yoko Miyashita ("Supp. Miyashita Decl.") Att. A. Indeed, Defendant's own

1

website for the Widget displayed, at Defendant's direction, a collage of volcano images, several of which are in Getty Images' collection. *See* Aul. Decl. Ex. E at 1; Supp. Miyashita Decl. Att. A, at 1-3. In any event, the mere threat of such infringement obviates the need for such proof (abundant as it is here) and is itself sufficient to warrant a preliminary injunction. *See* 17 U.S.C. § 502 (authorizing injunctions to "prevent or restrain infringement of a copyright"); *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993) (granting *permanent* injunction based on threat of infringement even though "there has been no showing" of actual distribution).

## II. DEFENDANT INFRINGES PLAINTIFF'S EXCLUSIVE RIGHTS OF REPRODUCTION AND DISPLAY

Defendant effectively concedes (as it must) that its creation and storage of thumbnail copies of every image it can find on the Internet is a *prima facie* infringement of Plaintiff's exclusive right of reproduction.[1] Instead, Defendant argues that this unauthorized copying amounts to fair use because it is done (according to Defendant) in connection with a "transformative" search engine function. *See* Opp. at 12-14. However, as shown in Plaintiff's opening brief (at 14-19), and discussed further below, the Bing Image Widget neither functions nor is promoted as a search engine, but is instead a website beautification tool through which Defendant supplies unlicensed content in direct competition with Plaintiff's own, licensed service. Fair use plays no role here.

There is also no dispute as to the essential facts that render Defendant liable for infringement of Plaintiff's exclusive right of display, whether that display occurs in "collage" or "slideshow" view in the Widget. Although Defendant seizes on the fact that the operation of the

---

[1] Rather than address this issue directly, Defendant manufactures the false premise that Plaintiff "does not assert that Microsoft commits an infringement in the creation of the Thumbnail Library …." Opp. at 2 & n.12. In fact, this is precisely what Plaintiff asserts, and what other courts have readily concluded. *See* Opening Br. at 10-11 (citing cases).

2

Widget involves the passing of computer code among Defendant, the website employing the Widget, and the end user's computer, Defendant controls and directs this entire interaction at every step, and it is Defendant's code that causes images to be displayed in the Bing-branded window, all without any further action (or even awareness) by the website employing the Widget or the website's end user.  *See* Hamrah Decl. at ¶¶ 10-18.  In Defendant's own formulation, there can be no question that Defendant "causes an unauthorized copy or display to be made" in these circumstances.  Opp. at 17.  And more to the point, under the *Copyright Act*'s formulation, Defendant "show[s] a copy" of the work "by means of … any … device or process" – just as the Act forbids.  17 U.S.C. § 101.

Defendant's attempt to rely on the "server test" (adopted in a different context and in another Circuit) to evade liability serves only to show how ill-suited that test is to the facts of this case.  *See* Opp. at 15-16.  According to Defendant, "the only thing that is ever provided to the Web Developer's Website is HTML computer code that points a portion of the Web Developer's Website to the Image Host Site so that the images contained there can be viewed through the Web Developer's Website."  *Id.*  Yet, it is Defendant who supplies that code from its own servers and directs and controls the entire process by which images are identified, extracted and viewed – a role that Defendant's use of the passive voice attempts to obscure.  Defendant's characterization is especially disingenuous as to the "collage" view, as the "Image Host Site" to which Defendant's code "points" is *Defendant's own server*, containing images that Defendant itself copied from the Internet at large, which Defendant's own Widget calls up for viewing through a Bing-branded display panel.  *See* Vaidya Decl. ¶ 38; Hamrah Decl. ¶ 20.  And even in "slideshow" view, the entire process – from the creation and supply of the code, to the selection

of images to display in the Widget in response to a query,[2] to the direction of the end-user's browser to retrieve and display the image through the Bing-branded window – is by Defendant's design and under Defendant's exclusive control, invisible to both the website and the end user.[3] Hamrah Decl. ¶¶ 10-18, 20-21; Vaidya Decl. ¶ 53.  To suggest that Defendant is not directly responsible for the display of images to the end user in these circumstances is to ignore entirely the practical reality of the user experience, Defendant's exclusive role in the process, and the language of the Copyright Act.

Indeed, even the *Perfect 10* court acknowledged that its "server test" was a policy judgment based on the facts before it, and did not characterize it as necessarily appropriate for every case.  In adopting the test in that case, the court expressly acknowledged that application of the test in other settings was "susceptible to extreme or dubious results."  *Perfect 10, Inc. v. Google, Inc.*, 416 F. Supp. 2d 828, 839 (C.D. Cal. 2006), *aff'd in relevant part sub nom.*, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007).  Whatever sense the server test may have made on the facts of *Perfect 10*, its application here would yield just such "extreme or dubious results" and would be inconsistent with copyright law's overarching goal "to secure a fair return for an author's creative labor and thereby to stimulate artistic creativity for the general public good." *Davis v. Blige*, 505 F.3d 90, 104 (2d Cir. 2007) (quotation marks omitted).

### III.   DEFENDANT'S INFRINGEMENT IS NOT FAIR USE

Defendant asserts that its copying and display of thumbnail-sized images is fair use

---

[2] Search engines alone determine what information they will return in response to a search query. *See Search King, Inc. v. Google Tech., Inc.*, No. CIV-02-1457-M, 2003 WL 21464568, at *4 (W.D. Okla. May 27, 2003) (finding that search rankings were "subjective result[s]" that constituted "opinions" of the search engine provider).

[3] As Defendant's own expert acknowledges, "only a user with a certain amount of technical expertise and the motivation to dig into the source code of the page being viewed would have any way of knowing that the image originated" elsewhere. Greenspun Decl. ¶ 31.

simply because Defendant makes those copies in connection with its Bing Image Search service. Opp. at 12-14.  According to Defendant, once a fair use copy has been made for one purpose, that copy can apparently be used for any purpose whatsoever, even if that purpose would not have excused the copying as fair use in the first instance.  Defendant's position (on which Defendant bears the burden of proof) finds no support in the law – or even in common sense.

The law is clear that the question of fair use turns on the particular use at issue, and that one fair use cannot excuse another use that is not itself fair.  *See* 17 U.S.C. § 107 (setting forth factors for "determining whether the use made of a work *in any particular case* is a fair use ….") (emphasis added); *see also, e.g.*, *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2004) (no fair use where uploading of copyrighted sound recordings simultaneously involved both "space-shifting" to the original user and distribution to the public); *Sandoval v. New Line Cinema Corp.*, 973 F. Supp. 409, 412 (S.D.N.Y. 1997), *aff'd*, 147 F.3d 215 (2d Cir. 1998) ("The defendant bears the burden of proof with respect to all issues in dispute concerning whether a particular use of a copyrighted work is a 'fair use' for purposes of 17 U.S.C. § 107").

Here, Defendant invokes a handful of cases that have excused the unauthorized copying and display of thumbnail images where they served the "transformative" purpose of a search engine.  Opp. at 13.  As those cases make clear, however, such copying and display can be fair use only to the extent that the image "serve[s] as a pointer to a source of information rather than serving as a form of entertainment" that supplants the need for the original.  *Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 555 (S.D.N.Y. 2013).[4]  The Bing Image

---

[4] *Cf. Fox News Network, LLC v. TVEyes, Inc.*, 13 Civ. 5315, 2014 WL 4444043, at *10 (S.D.N.Y. Sept. 9, 2014) (fair use unavailable where defendant "provides essentially the same service as could be provided by the content provider itself"); *id.* at *11 (distinguishing video clip service from *Meltwater* because, *inter alia*, Meltwater "simply 'crawled' the Internet, gathering extant content," whereas video clip service "creates a database of otherwise unavailable content,"

5

Widget is not such a "pointer" serving the informational purpose of a search engine, but is instead a tool expressly marketed and used to enhance the visual appeal of websites, in direct competition with Plaintiff's own licensed offerings, and to encourage users to enter and remain in Defendant's own universe of websites.[5] Thus, even if Defendant's copying of images for its Bing Image Search library were fair use – which Plaintiff does not concede[6] – such copying for the distinctly different purpose of display within the Bing Image Widget plainly is not.[7]

---

a practice "different in kind from Meltwater's, which simply amalgamated extant content that a dedicated researcher could piece together with enough time, effort, and Internet searches").

[5] Defendant's claim that the purpose of the Widget is "to enhance a website user's ability to explore a topic more fully … and to facilitate and encourage exploration, comment and criticism," Opp. at 1, is transparently manufactured for this litigation, and is belied by the implementation of the widget on third-party websites, *see* Supp. Miyashita Decl. Att. A; Aul Decl. Ex. H, as well as Defendant's own promotion of the Widget at the time of its release, Aul Decl. Ex. F at 1 (marketing the Widget to website publishers as a tool that "provides your users with beautiful, configurable image collages and slideshows").

[6] The design and function of Defendant's Bing Image search service today is materially different from those at issue in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), on which Defendant relies for its fair use claim. *Compare, e.g.*, Supp. Miyashita Decl. Att. C (illustrating pre-2010 Google Image Search) *with id.* Att. D (illustrating Bing Image search today). The finding of fair use in the earlier setting of *Perfect 10* (based on low-resolution, thumbnail-sized images that, when clicked, led the user directly to the image in its full context on the original website) is thus not determinative of whether Defendant's conduct today – even as it concerns only Bing Image search – is fair use. The court need not decide that question here.

[7] For the same reason, Defendant's suggestion that Plaintiff should be required to send "takedown" notices under the Digital Millennium Copyright Act ("DMCA") to have its images removed from the Bing Image Search index is a makeweight. *See* Opp. at 13 & n.7 (citing 17 U.S.C. § 512(d)). The DMCA's safe harbor provisions "describe separate and distinct functions" for purposes of determining whether an Internet service provider is entitled to immunity – in other words, that immunity is not provided on a blanket basis, but instead is limited only to the particular function at issue. *See* 17 U.S.C. § 512(n); *see also Perfect 10, Inc. v. CCBill, LLC*, 488 F.3d 1102, 1116-17 (9th Cir. 2007) (noting that Internet service provider "does not receive blanket immunity for its other services" even where one of its services is entitled to safe harbor). The DMCA has no application where, as here, Defendant is not functioning as a search engine; nor are the images themselves necessarily infringing in their original location, as the DMCA contemplates. *See* 17 U.S.C. § 512(d) (referring to liability by reason of an information location tool's linking to "an online location containing infringing material"). Moreover, the suggestion that Plaintiff's only remedy is to have its images removed from the search engine would unfairly "shift the burden to the copyright holder to prevent unauthorized use instead of placing the

6

## IV.   DEFENDANT'S "VOLITION" ARGUMENT IS A RED HERRING

Defendant spends much of its brief on the subject of "volition," claiming that its users – even those who employ the Bing Image Widget precisely as Defendant instructs them to – are direct infringers, and that Defendant is not a sufficiently "volitional" actor for purposes of its own direct liability.  The discussion of "volition" is ultimately irrelevant, however, as Defendant's volitional conduct (to the extent that volition is even required for direct liability)[8] is immediately apparent from the exclusive control that Defendant exercises over the entire process by which images are selected and displayed through the Bing Image Widget.  *See* Hamrah Decl. at ¶ 10.  Indeed, even the *Perfect 10* court saw no need to examine the volition requirement: "Because Google initiates and controls the storage and communication of these thumbnail images, we do not address whether an entity that merely passively owns and manages an Internet bulletin board or similar system violates a copyright owner's display and distribution rights when the users of the bulletin board or similar system post infringing works." *Perfect 10*, 508 F.3d at

---

burden on the infringing party to show it had properly taken and used content." *Meltwater*, 931 F. Supp. at 563.  As this Court has observed, "most Internet users (and many owners of websites) would like crawlers employed by search engines to visit as many websites as possible, to include those websites in their search results, and thereby to direct viewers to a vast array of sites." *Id.* at 564.  Defendant's proposed solution, which would require Plaintiff to remove itself from the Internet, is thus no solution at all.

[8] Although Defendant's volition is evident here, the existence of a "volition" requirement for direct liability is dubious in the wake of the Supreme Court's recent decision in *American Broadcasting Cos. v. Aereo, Inc.*, 134 S. Ct. 2498 (2014).  In reversing a decision from the Second Circuit, a majority of the Court acknowledged – and ultimately dismissed – the dissent's call for "volition" as an element of direct infringement of the public performance right.  *Id.* at 2507.  Moreover, even before *Aereo*, the notion of a "volition" requirement has been criticized or questioned by leading copyright scholars and other courts.  *See, e.g.,* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.08[c], at 13-290.4(1)-.5 (2014) (stating "respectful[] disagree[ment]" with the Second Circuit's "treatment of volitional conduct");  II Paul Goldstein, *Goldstein on Copyright* § 7.0.2, at 7:8:1 (3d ed. 2014 Supp.) ("American copyright law has never required that liability for direct infringement be imposed only on the individual who presses the 'record' button");  *Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 55 (1st Cir. 2012) (noting that the "volitional act' position" had been raised in other circuits with only "varying degrees of success"), *cert. denied*, 133 S. Ct. 1315 (2013) .

7

1060; *see also Perfect 10, Inc. v. Giganews, Inc.*, No. CV11-07098, 2013 WL 2109963, at *7 (C.D. Cal. Mar. 8, 2013) ("[T]here was no question in [*Perfect 10 v. Amazon*] that the defendant had committed a volitional act" because Google had "created thumbnails and cached pages of infringing photos and websites").

### V.   INJUNCTIVE RELIEF IS NECESSARY TO PREVENT IRREPARABLE HARM

Defendant contends that Plaintiff's assertions of harm are speculative, and that there is no evidence that the Widget will be used to supplant demand for Plaintiff's own, licensed offerings. The mere fact that third-party websites have *already* used the Widget for this purpose within even the first days of the Widget's release is proof enough.  *See* Supp. Miyashita Decl. Att. A. Indeed, as one early review of the Widget enthused:

> You decide to share images generated from a certain search query, but don't want to save and upload each of them individually, or infringe any copyright laws? Well with the Bing Image widget, doing just that is as easy as adding an image to a webpage…. And the best part?  You don't have to worry about copyright infringements since you're not embedding copyrighted images onto your site – you're just serving images from a search engine!

Aul. Decl., Ex. G at 1, 3.  Still another industry observer asked, "Does Anyone Need To Pay For Images Anymore?"  *Id.* at 9.  The scope of the threat that the Widget poses to Plaintiff's business is abundantly clear.

Nevertheless, Defendant asserts that injunctive relief is unwarranted here because Defendant "voluntarily disabled the Widget a day after learning of Getty's claims."  Opp. at 3. That assertion, however, is manifestly untrue.  Although Defendant removed the single webpage on which it had promoted the Widget, the Widget remains fully operational on websites around the world, to which Defendant continues to supply images – including Plaintiff's copyrighted images – without a license to do so.  *See* Supp. Miyashita Decl. Att. A.

Moreover, even if Defendant had disabled the Widget, a court order would still be necessary to prevent Defendant from re-launching the Widget in ways that continue to infringe Plaintiff's copyrights. A "defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is *absolutely clear* the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) (emphasis added) (quotation marks omitted); *see also, e.g.*, *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 405 (2d Cir. 2004) (affirming preliminary injunction on trademark claim even though defendant "had agreed, prior to the initiation of the suit, to cease using [plaintiff's] name"); *Mercury Record Corp. v. Buckingham Record Co.*, 226 F. Supp. 427, 429 (S.D.N.Y. 1963) ("Defendant maintains that as soon as the complaint in this action was filed, defendant discontinued the use of the offending jacket. I need not determine whether this is the fact, for even if it is, it affords no reason for denying a preliminary injunction.")

Here, Defendant retains the ability to restore the Widget to its webpage with the touch of a button, and has already announced its intention to do so without committing to the terms of the Order to Show Cause. *See* Hosp Decl. Ex. 1. Defendant remains purposefully vague about how it would decide whether images it will display through the Widget are properly "licensed," arrogating to itself the discretion to make those judgments.[9] Plaintiff should not be "required to rest upon defendant's assurances that it will not in the future" engage in the same infringing activity that forms the basis of this lawsuit. *Consumers Union of U.S., Inc. v. Admiral Corp.*,

---

[9] Defendant expressly intends to resume the Widget to provide copyrighted images for which Defendant *or* its users has a license (not necessarily an express license, as the Order to Show Cause requires) to use those images through the Widget. Hosp. Decl. Ex. 1. It is well settled, however, that a commercial entity like Defendant cannot avail itself of defenses to copyright infringement that its users may enjoy. *See Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 112 (2d Cir. 1998) ("[C]ourts have rejected attempts by for-profit users to stand in the shoes of their customers") (quotation marks omitted) (alterations in original)).

9

186 F. Supp. 800, 801 (S.D.N.Y. 1960); *see also United Farm Workers Nat'l Union v. Sloan's Supermarkets, Inc.*, 352 F. Supp. 1025, 1029 (S.D.N.Y. 1972) ("The Court is cognizant of the rule that a preliminary injunction is not precluded merely because the action complained of has ceased . . . or because the defendant has sworn it will not happen again . . . ."). This is even more so given the Widget's continued operation – including the ongoing display of Plaintiff's copyrighted images – despite Defendant's claim to have "disabled" the Widget, and given Defendant's continued insistence on the legality of its conduct. *See* 13C Charles Alan Wright et al., *Federal Practice & Procedure* § 3533.5, at 248 (3d ed. 2008) ("The effect of discontinuance may be affected by the defendant's continued assertion that the discontinued acts are lawful"); *Consumers Union of U.S., Inc. v. Theodore Hamm Brewing Co.*, 314 F. Supp. 697, 701 (D. Conn. 1970) (granting preliminary injunction where the defendant "reserv[ed] all rights 'to challenge at trial the validity of the alleged copyright'"). Only an injunction from this Court can provide Plaintiff with the necessary protection from the continuing threat that Defendant's Widget poses to Plaintiff's core business.[10]

## CONCLUSION

For the foregoing reasons, the requested preliminary injunction should be granted.

---

[10] Defendant makes no serious effort to challenge Plaintiff's showing on the balance of harms and the public interest, nor could it. Indeed, the strong public interest in Plaintiff's work – which includes the employment of hundreds of staff and stringer photographers who travel the globe (at Plaintiff's expense) to capture compelling, award-winning images that both entertain and inform – is undeniable. *See, e.g.*, Aul Decl. Ex. C (images of conflict in Ferguson, Missouri taken by Getty Images photographer Scott Olson); *id.* Ex. D at 12-23 (images from inside an Ebola ward in West Africa taken by Getty Images photographer John Moore); Supp. Miyashita Decl. ¶ 3. Like that of the Associated Press in *Meltwater*, Plaintiff's work is "an expensive undertaking and enforcement of the copyright laws permits [Plaintiff] to earn the revenue that underwrites that work." 931 F. Supp. 2d at 553. And like the defendant in *Meltwater*, Defendant here should not be permitted "to free ride on the costly news gathering and coverage work performed by other organizations." *Id.*

Dated: September 16, 2014

Respectfully submitted,

/s/ Kenneth L. Doroshow
Kenneth L. Doroshow (KD-8374)
Amir H. Ali
Zachary C. Schauf
JENNER & BLOCK LLP
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone: (202) 639-6027
Facsimile: (202) 639-6066

Alison I. Stein
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 891-1600
Facsimile: (212) 891-1699

*Attorneys for Plaintiff*

11