UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GETTY IMAGES (US), INC.,

Plaintiff,

v.

MICROSOFT CORPORATION,

Defendant.

CIVIL ACTION NO. 1:14-CV-07114-DLC

**FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF AND
DAMAGES**

Plaintiff Getty Images (US), Inc. ("Getty Images"), for its complaint against Defendant Microsoft Corporation ("Microsoft"), avers as follows:

## NATURE OF THE CASE

1.      Plaintiff Getty Images brings this action to enjoin Defendant Microsoft from infringing and facilitating the massive infringement of Plaintiff's copyrights through a new service that Defendant introduced just a few weeks ago.  Plaintiff also seeks damages and other appropriate remedies for that infringement, as specified below.

2.      On or about August 22, 2014, Defendant Microsoft released a new service called "Bing Image Widget," which Defendant marketed to website publishers as a tool for enhancing the visual quality of their websites.  The Bing Image Widget allowed website publishers to embed a panel on their websites that displayed digital images supplied by Defendant through its proprietary "Bing Image Search" search engine, based on search queries of the website publisher's choosing.  The resulting display, Defendant told website publishers, "enhances your web site . . . and provides your users with beautiful, configurable image galleries and slideshows."[1]

_____

[1] *See* Exhibit C hereto.

3.      What Defendant failed to mention, however, is that these "beautiful, configurable image galleries and slideshows" typically consisted of copyrighted images, including images whose copyrights are owned or controlled by Plaintiff.   Rather than draw from a licensed collection of images, Defendant gathered these images by crawling as much of the Internet as it could, copying and indexing every image it found, without regard to the copyright status of the images and without permission from copyright owners like Plaintiff.   The supply of images for the Bing Image Widget was therefore in the billions – essentially, the entire universe of images that Defendant could find on the Internet – including Plaintiff's highly valuable copyrighted works.   In effect, Defendant turned the entirety of the world's online images into little more than a vast, unlicensed "clip art" collection for the benefit of those website publishers who implemented the Bing Image Widget, all without seeking permission from the owners of copyrights in those images.

4.      The injury that Defendant's Bing Image Widget has caused Plaintiff – and, if not enjoined, will cause further – is immense and irreparable.   Plaintiff is one of the world's largest providers of commercial visual content and the leading provider of commercial images online, representing more than 80 million unique works of digital imagery.   Plaintiff's business is thus critically dependent on licensing to others the right to use Plaintiff's images in precisely the manner that Defendant now uses them illegally.   By freely providing these images to websites after having copied them from other websites (without any permission to do so), Defendant has all but eliminated the incentive of website publishers to seek proper licenses from Plaintiff for the right to display its images on their websites.   Given the nature and scale of Defendant's conduct, the actual injury to Plaintiff is incalculable and cannot be remedied by monetary damages alone.   Although Defendant has temporarily disabled the Bing Image Widget as of

September 17, 2014, Defendant has expressly stated its intent to resume its operation.  Plaintiff

asks, therefore, that the Court enjoin Defendant from resuming its Bing Image Widget (or

comparable technology) and award damages arising out of Defendant's unlawful conduct.

## JURISDICTION AND VENUE

5.     This is a civil action seeking injunctive relief and damages for copyright

infringement under the Copyright Act, 17 U.S.C. § 101 *et seq*.

6.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331

and 1338(a).

7.     The Court has personal jurisdiction over Defendant pursuant to N.Y. C.P.L.R. §§

301 and 302(a) because Defendant (i) transacts or solicits business within the State of New York

through, *inter alia*, its office in this District; (ii) has designated an agent for service of process in

the State; (iii) has committed acts of copyright infringement within the State and in this District;

(iv) has committed acts of copyright infringement outside the State, which caused injury to

Plaintiff within the State and which Defendant expected or should reasonably have expected to

have consequences within the State; (v) derives substantial revenue from interstate or

international commerce; and (vi) previously subjected itself to jurisdiction in the State by filing

numerous suits in this Court.

8.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a).

## PLAINTIFF AND ITS BUSINESS

9.     Plaintiff Getty Images is a corporation organized under the laws of New York

with its principal place of business in New York, New York.

10.    Getty Images is one of the world's leading content providers.  It supplies imagery,

video, and music to business customers for a wide variety of uses, including websites, books,

newspapers, magazines, film and television production, advertisements, and product packaging. It is one of the world's largest providers of commercial visual content and the leading provider of commercial images online. Included among Getty Images' collection of works are many of the most iconic, creative and engaging photographic images ever created.

11.     Getty Images' revenue is generated primarily by licensing the rights to use its content. Getty Images owns much of the content it licenses, but also acts as a distributor for more than 150,000 other content suppliers, including photographers, illustrators, filmmakers, media organizations, and other stock photo companies, all of whom depend on Getty Images for the collection and distribution of royalties and management of their intellectual property. These content suppliers retain ownership of the copyrights in their works but grant Getty Images by contract the right to market, distribute, and license those works to third parties. Getty Images owns or represents more than 80 million unique works of digital imagery.

12.     Getty Images was the first company to license imagery via the Internet and currently delivers virtually all of its content through digital means. Getty Images maintains a website at www.gettyimages.com, where visitors can search and view millions of images and obtain licenses to use them. Getty Images has invested and continues to invest substantial resources in operating this website in order to provide potential customers with the means to browse its images and acquire rights to use them.

13.     In March 2014, Getty Images revolutionized the way in which images are licensed and distributed online. Through its innovative "Embed" offering, Getty Images now permits noncommercial websites and users of social media to use any of approximately 50 million of Getty Images' copyrighted images without payment of any fees whatsoever, provided that the image is displayed using Getty Images' new "Embed" tool. The "Embed" tool consists

4

of a short snippet of code (computer instructions) that a website publisher includes in a webpage or a social media user includes in a post in order to embed a specific image within their content. This code causes the computer of a website visitor or a social media participant to obtain the specified image from a Getty Images server, where the image is actually hosted, and displays the selected image in an embedded viewer that includes photographer attribution and the Getty Images name and logo.  A click on the image leads the viewer to a page where he or she may license commercial uses on a paid basis.

14.     A non-exhaustive, illustrative list of federally copyrighted works that Defendant has illegally reproduced, distributed, and displayed is attached hereto as Exhibit A.  These works are owned by, or exclusively licensed to, Getty Images.   The United States Register of Copyrights has issued, and Getty Images possesses, Certificates of Copyright Registration for these copyrighted works, true and correct copies of which are attached hereto as Exhibit B.

### THE DEFENDANT AND ITS UNLAWFUL CONDUCT

15.     Defendant is a corporation organized under the laws of the State of Washington, with its principal place of business in Redmond, Washington, and has at least two offices in the State of New York, including an office in this District.

16.     Defendant is a multinational company that develops, produces, licenses and/or sells a wide variety of products and services, including computer software, electronics, and online services.

17.     One of Defendant's services is an Internet search engine known as "Bing," which includes a specialized, image-oriented search engine known as "Bing Image Search."   Like other search engines, Bing crawls the Internet for online content and creates an index of that content in a database stored on Bing's own servers.  Bing responds to user search queries by consulting its

index and providing to the user the content that Bing determines is most relevant to the user's query.

18.     In crawling the Internet for online content, Bing also makes at least one copy of every image that it finds online and stores at least a reduced-size, "thumbnail" copy of each image on its servers.   Bing Image Search distributes and displays the thumbnails to users in response to image search queries along with larger-sized images and links to the third-party source websites that host the full-sized images, from which Bing's copies were derived.

### The Bing Image Widget

19.     On or about August 22, 2014, Defendant released its Bing Image Widget, which Defendant marketed to website publishers as a tool that "enhances your web site with the power of Bing Image Search and provides your users with beautiful, configurable image galleries and slideshows."[2]  Similar to Plaintiff's "Embed" tool, the Bing Image Widget consisted of a snippet of code that website publishers could copy from the Bing Image Widget website, www.bing.com/widget/image, and paste directly into the source code of pages on the publisher's own website:

---

[2] Exhibit C.



20.     Once the Bing Image Widget code was added to a page on the publisher's website, that page would include an embedded panel, bearing the "Bing" logo, in which Defendant would display images from Bing Image Search that Defendant determined were most responsive to a search query of the publisher's choosing.

21.     Certain features of the display could be customized by the website publisher before he or she copied and pasted the Bing Image Widget code into his or her own pages (the code would change depending on the choices that the website publisher made).  For example, Defendant gave the website publisher the option to have the images presented in either a "collage" or "slideshow" format.  If the publisher chose the "collage" format, the display panel would include a number of different thumbnail-sized images that Bing Image Search determined were relevant to the particular search query.  To illustrate using the preview feature on www.bing.com/widget/image, a query for the words "Marilyn Monroe" yielded a collection of thumbnail-sized images of Marilyn Monroe in the display panel:

7



22.      If the website publisher chose instead to have a "slideshow," then the display panel would include a number of larger-sized images – between 1 and 25, at the publisher's election – that would appear one at a time, swapping out every few seconds.  Again, a query for "Marilyn Monroe" yielded a series of larger-sized, interchanging images of Marilyn Monroe in the display panel, which could be limited to a single, static image if the "slideshow" were limited to only one image:



23.     Although the Bing Image Widget was released only recently and was designated by Defendant as a "beta" version, it had already been implemented by websites around the world – including in commercial settings – before Defendant disabled it on September 17, 2014, such as in the following example of a website for The Oak Store furniture store in Oakwood, Georgia, which selected the "slideshow" view of images based on a search query for "oak trees":



24.    In another example, a website that sells fitness equipment and focuses on issues of health, fitness and nutrition selected the "slideshow" view based on a search query for "fitness":



---

3 http://www.theoakstorega.com
4 http://healthnexercise.com

25.     In yet another example, a website for a business that rents vacation accommodations on the Markaska Riviera in Croatia selected the "collage" view based on a search query for "croatia markaska":



26.     The images that Defendant used to populate the Bing Image Widget display panel with content were not from some collection for which Defendant or users of the Bing Image Widget obtained licenses to use in this manner.   Instead, Defendant drew from the vast repository of images that Bing Image Search copies and indexes from the Internet at large, including Plaintiff's copyrighted images, even though Defendant neither had nor has a license or permission from Plaintiff to do so.

---

[5] http://www.makar80.eu/index.html

27.     If the user of the Bing Image Widget selected the "collage" view option, then Defendant simply populated the display panel with Defendant's own thumbnail-sized copies of the images that Defendant stores on its own servers.  If the "slideshow" view was selected, then Defendant directed the user's browser (in a manner that is invisible to the user) to download and display the larger-sized image from the third-party website that hosts the image and from which Defendant, through Bing Image Search, made its copy of the thumbnail version of the image. Although the larger-sized image that appeared in the display panel is hosted and served from the third-party source's server, Defendant intentionally masked the third-party source website and any context that surrounds the image as it appears on that third-party site, creating the appearance that the image was instead coming from the Bing-branded display panel.  Further masking the image's origin (and serving Defendant's own commercial interests), clicking the image took the user not to the third-party source website, but instead to Defendant's own Bing Image Search site.

28.     Although Defendant drew on images and data that it collected through the operation of the Bing search engine, the Bing Image Widget did not function – nor did Defendant promote it – as a search engine that directed users to third-party sources of information online.  To the contrary, Defendant expressly marketed the Bing Image Widget as a website enhancement tool, designed to make websites on which the Widget was installed more visually attractive to users and to keep users from leaving the website, thereby increasing the website's economic value.   As Defendant itself proclaimed, the Bing widgets "driv[e] engagement, time-on-site, and user satisfaction."[6]

---

[6] http://www.bing.com/webmaster/help/bing-knowledge-widget-how-to-install-and-configure-a0de7aba (discussing the Bing Knowledge Widget).

29.     Moreover, Defendant derived significant economic value from the fact that clicking an image in the Bing Image Widget display panel took the user not to the third-party source website, but instead to Defendant's own Bing Image Search website.  Drawing users to its own universe of websites and maximizing the time that users remain there allows Defendant to derive valuable data about those users and increases the value of Defendant's websites for advertising purposes, among others.  Indeed, Defendant expressly reserved the right to charge direct fees for the use of the Bing Image Widget and to further monetize the service by placing advertisements in the Bing results in the display panel.  *See* Exhibit C (terms of service).

30.     Defendant, through its Bing Image Widget, competed directly with Plaintiff by supplying imagery to website publishers in order to enhance the appearance, attractiveness and value of websites on which that imagery was displayed, and to attract users to its own websites. Unlike Plaintiff, however, Defendant had and has no license or other permission to use Plaintiff's copyrighted images in this manner, and paid nothing to the photographers and contributors who created the images.

31.     Defendant's unlawful reproduction, distribution and display of Plaintiff's copyrighted works has harmed and, upon being resumed, will continue to harm, Plaintiff.  If website publishers can obtain from Defendant a virtually limitless collection of online images for display on their websites for free and without restriction, they will have little or no incentive to license such uses of Plaintiff's copyrighted images from Plaintiff.  Defendant's services thus acted and, if not enjoined, will continue to act as a substitute that displaces significant numbers of legitimate licensing agreements.  Moreover, Defendant supplied images to the Bing Image Widget with no controls on their downstream use, leaving users free to copy and further distribute Plaintiff's images in ways that cause additional, and incalculable, damages.  In short,

the Bing Image Widget poses a significant threat to the economic viability of Plaintiff's business, its photographers and content suppliers, and, indeed, the entire photographic industry.

## FIRST CAUSE OF ACTION

### Copyright Infringement, 17 U.S.C. § 501, *et seq*.

32.     Getty Images repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 31, as if set forth herein.

33.     Getty Images is the owner or exclusive licensee of copyrights in the images that are the subject of this action, including but not limited to the works listed in Exhibit A hereto.

34.     Defendant, without the permission or consent of Plaintiff, has reproduced, distributed to the public, and publicly displayed Plaintiff's copyrighted images, and has knowingly encouraged, materially contributed and/or facilitated the unauthorized reproduction, distribution, and display of Plaintiff's copyrighted images by others, including but not limited to the copyrighted works listed in Exhibit A hereto.  Such reproduction, distribution and display of Plaintiff's works constitutes infringement of Plaintiff's exclusive rights under copyright in violation of 17 U.S.C. § 106(1), (3) and (5).

35.     Defendant is directly and indirectly liable for these acts of infringement under the Copyright Act.

36.     Defendant had the right and ability to stop or limit infringement occurring through the use of the Bing Image Widget and had a direct financial interest in such infringing activities.

37.     The infringement of Plaintiff's rights in each of its copyrighted works constitutes a separate and distinct act of infringement.

38.     Defendant's acts of infringement were willful, intentional and purposeful, in disregard of and with indifference to the rights of Plaintiff.

14

39.     Defendant's conduct has caused, and, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

(a)     for a declaration that Defendant willfully infringed Plaintiff's copyrights;

(b)     for such equitable relief under Titles 17 and 28 as is necessary to prevent or restrain infringement of Plaintiff's copyrights, including a preliminary injunction and a permanent injunction requiring that Defendant and its officers, agents, servants, employees, attorneys, and others in active concert or participation with each or any of them, (i) cease infringing, or causing, enabling, facilitating, encouraging, promoting or participating in the infringement of, any of Plaintiff's copyrights or exclusive rights protected by the Copyright Act or common law, whether now in existence or hereafter created; and (ii) cease to use, offer, provide or otherwise support the Bing Image Widget (or comparable technology) unless and until Defendant satisfies the Court that Defendant has ceased to infringe and will not resume infringing Plaintiff's copyrights;

(c)     for statutory damages pursuant to 17 U.S.C. § 504(c), in the maximum amount provided by law, as may be proven at trial, arising from Defendant's violations of Plaintiffs' rights under the Copyright Act or, in the alternative, at Plaintiff's election pursuant to 17 U.S.C. § 504(b), Plaintiff's actual damages, including Defendant's profits from infringement, in amounts to be proven at trial;

(d)     for Plaintiff's costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505 and otherwise;

(e)       for pre- and post-judgment interest on any monetary award made part of the

judgment against Defendant; and

(f)       for such other relief as the Court may deem just and proper.


Dated:  September 24, 2014                    Respectfully submitted,


                                              _/s/ Kenneth L. Doroshow_____
                                              Kenneth L. Doroshow (KD-8374)
                                              Amir H. Ali
                                              Zachary C. Schauf
                                              JENNER & BLOCK LLP
                                              1099 New York Ave., N.W.
                                              Suite 900
                                              Washington, DC 20001
                                              Telephone:  (202) 639-6027
                                              Facsimile: (202) 639-6066

                                              Alison I. Stein (AS-2884)
                                              JENNER & BLOCK LLP
                                              919 Third Avenue
                                              New York, NY 10022
                                              Telephone:  (212) 891-1600
                                              Facsimile:  (212) 891-1699

                                              *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2014, I caused the foregoing document and accompanying exhibits to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


Executed:  September 24, 2014               /s/ Kenneth L. Doroshow_____
                                           Kenneth L. Doroshow (KD-8374)